IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMY GRANNON,

                **Plaintiff,**

     vs.                               Civil Action 2:12-CV-494
                                            Judge Graham
                                            Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

      This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 14, the Commissioner's *Memorandum in Opposition*, Doc. No. 17, and plaintiff's *Reply*, Doc. No. 18.

      Plaintiff Amy Grannon filed her current application for benefits on November 27, 2007, alleging that she has been disabled since January 1, 2006, as a result of bipolar disorder and depression. *PageID* 219. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      A hearing was held on October 19, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Paul F. Gatens, M.D., who testified as a medical expert, and Jerry A. Olsheski, who testified as a vocational expert. In a decision dated January 7, 2011, the administrative law judge concluded that plaintiff was not disabled. *PageID* 51-61. That decision became the final decision of the Commissioner of Social

1

Security when the Appeals Council declined review on April 23, 2012. *PageID* 42-44.

Plaintiff was 32 years of age on the date she filed her current application for benefits. *PageID* 60, 72-73. She has a tenth grade, "limited," education, *PageID* 224, and past relevant work experience as a car driver for an auto auction, a cashier, a factory worker and a meat cutter at a grocery store. *PageID* 220.

### The Evidence of Record[1]

On October 8, 2007, plaintiff was admitted to the psychiatric unit of Genesis Good Samaritan Hospital ("Genesis") for depression and bipolar affective disorder. *PageID* 317-23.  Plaintiff reported to Mukesh Rangwani, M.D., that she had not consulted a psychiatrist even though she is "kind of depressed" and had entertained thoughts of death. *PageID* 317-18. Dr. Rangwani characterized plaintiff as outgoing and social and noted that she had complied with treatment and had interacted quite appropriately with staff and other patients. *PageID* 317.  According to Dr. Rangwani, plaintiff's memory was intact, she was thought to be of average intelligence, and she exhibited fair grooming and hygiene. *PageID* 320. Dr. Rangwani diagnosed bipolar affective disorder, mixed, and assessed plaintiff's Global Assessment of Functioning (GAF) at 50, which is indicative of serious dysfunction. *Id.*  Plaintiff's psychotropic medications were adjusted and she was discharged two days later. *Id.*

Plaintiff began treatment at Six Counties, Inc., in November 2007. *PageID* 328-39.  Amy Green, a therapist, reported that plaintiff experiences depressive symptoms daily, but is not suicidal. *PageID* 336.

---

[1] Plaintiff challenges only the residual functional capacity assessment related to plaintiff's mental impairments. *See PageID* 1043.  The Court will therefore limit

Ms. Green diagnosed bipolar disorder I, mixed, moderate, and borderline personality disorder. *PageID* 337. Wheaton B. Wood, M.D., also examined plaintiff and managed her medications. *PageID* 324-26. Dr. Wood characterized plaintiff as quite irritable; she had poor concentration but slept well. *PageID* 325. Plaintiff also demonstrated disproportionate anger. *Id.* Dr. Wood diagnosed Bipolar II, r/o borderline personality disorder, and alcohol abuse in sustained full remission. *Id.* In December 2007, Dr. Wood adjusted plaintiff's medication. *PageID* 436-37.

State agency psychologist Robelyn Marlow, Ph.D., reviewed the file in January 2008. *PageID* 387-405. According to Dr. Marlow, plaintiff was moderately restricted in her activities of daily living, in maintaining social functioning, and in the areas of concentration, persistence and pace. *PageID* 397. Plaintiff was moderately limited in her abilities to maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extreme, respond appropriately to changes in the work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *PageID* 401-02. Dr. Marlow concluded that plaintiff can perform simple, steady, repetitive work and can choose to relate appropriately. *Id.*

Plaintiff continued to treat with Ms. Green and Dr. Wood at Six Counties through at least October 2009. *PageID* 433-46, 505-51, 636-72. Plaintiff's complaints included sleep problems, depressed mood, suicidal ideation and anger problems. *Id.* Diagnoses included major depressive

---

its discussion of the record to the evidence of plaintiff's claimed mental

disorder and borderline personality disorder. *Id.* In February 2008, plaintiff reported to Ms. Green that she "want(s) to go back to the hospital where it was quiet" and that family conflicts prompted suicidal thoughts upon which she would not act. *PageID* 395. In April 2008, plaintiff asked Ms. Green if she had to report thoughts of hurting herself before she could return to the hospital. *PageID* 507. Ms. Green responded that plaintiff could not "vacation" at the hospital. *Id.*  Two days later, plaintiff was tearful and depressed and exhibited a flat affect. *PageID* 527.

Plaintiff was admitted to Genesis for 3 days in May 2008 for suicidal ideation with a history of affective disorder and noncompliance with medication. *PageID* 760-62. She complained of family conflict and financial problems. *PageID* 760. Dr. Rangwani characterized plaintiff as depressed and isolative. Medication was resumed and plaintiff responded well to therapy.  Plaintiff was discharged after denying suicidal or homicidal ideation. *Id.*

In June 2008, Ms. Green noted that plaintiff was calm and that her symptoms had improved; plaintiff had not been compliant with her medications, however. *PageID* 505. According to Ms. Green, plaintiff's personality disorder continued to predominate. *Id.*

Plaintiff returned to Genesis ten days later after ingesting Ambien. *PageID* 553-63.

State agency psychologist Steven Meyer, Ph.D., reviewed the record on June 26, 2008. *PageID* 564. Dr. Meyer noted several additional brief in-patient hospitalizations for stabilization after suicidal gestures. Dr. Meyer attributed these episodes to plaintiff's increasing desire for

---

impairments.

hospitalization rather than to any additional limitation or significant decrease in her ability to function. *Id.*

In October 2008, Dr. Wood characterized plaintiff as a "[v]ery depressed borderline patient" and rendered diagnoses of borderline personality disorder and major depressive disorder, recurrent atypical type. *PageID* 648. According to Dr. Wood, plaintiff is "a very self-distorted, powerless feeling person who has enormous amounts of anger and rage and this will define the treatment more than any diagnostic label." *PageID* 649.

Plaintiff was again hospitalized for depression and suicidal thoughts in January 2009 (*PageID* 745-49), March 2009 (*PageID* 896-901), April 2009 (*PageID* 742-44) and on September 4, 2009 (*PageID* 908-18).

Plaintiff presented to the emergency room at Fairfield Medical Center on September 19, 2009 following an overdose of Ambien. *PageID* 854-71. She refused to attend counseling sessions but did take her medications. She was discharged five days later, in a stabilized condition and with medications. *PageID* 868.

Charles Loomis, M.Ed., performed a consultative psychological evaluation on behalf of the state agency on February 18, 2010. *PageID* 579-87. Plaintiff reported crying spells, poor appetite, sleep difficulties and a low sense of self worth. *PageID* 581. According to Mr. Loomis, plaintiff's mood was appropriate although she presented with some symptoms of depression. *Id.* There were no abnormalities of mental content. Plaintiff appeared to be functioning in the average range of intelligence. *PageID* 582. Mr. Loomis diagnosed a mood disorder and personality disorder. *PageID* 583. He assigned a GAF score of 55, which is suggestive of moderate

dysfunction. *Id.* According to Mr. Loomis, plaintiff's mental ability to relate to others was not impaired nor was her ability to understand, remember, and follow complex instructions. Her ability to maintain attention and concentration was not impaired. Her ability to cope with the ordinary stresses and pressures of competitive work was moderately impaired. *PageID* 584.

Plaintiff was again hospitalized at Genesis on June 6, 2010, for complaints of ongoing suicidal ideation and depression. *PageID* 950-68. She asked that her medications be changed. *PageID* 954.  She was discharged once her condition was stabilized. *PageID* 960.

The record also contains a Mental Residual Functional Capacity Assessment completed on October 19, 2010 by John Bova.[1]  According to Mr. Bova, plaintiff had poor or no ability to respond appropriately to changes in routine settings, work in coordination with or proximity to others without being unduly distracted or distracting, deal with work stresses, or socialize. *PageID* 1036-37. Plaintiff had a fair ability to complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Mr. Bova believed that, even when stable on medication, plaintiff would still be anxious in crowds and social situations. *PageID* 1037.

Plaintiff testified at the administrative hearing that she continues to experience crying spells and severe mood swings, particularly without her medication. There are days during which she does not get out of bed. *PageID* 85.  She described feelings of worthlessness and episodes of

---

[1]The record does not reflect John Bova's credentials.

suicidal ideation. *PageID* 86. Her medications cause drowsiness and nausea. *PageID* 88. She also reported problems with concentration and memory. *Id*.

Plaintiff testified that her husband performs all household chores and cares for the children. *PageID* 89-91. She drives twice per day. *PageID* 99. On a typical day,

> I get up at 10:00 o'clock, I don't want to, but I have to. I get up at 10:00 o'clock and take my medicine and I'll sit in my recliner and then I'll get up -- well, I don't sit in it all day. I'll get up after I get done taking my medicine, I will check the mail or whatever and then I get up and I try to clean the front room up a little bit and then I'll sit down and take a break and check my daughter's homework because she's home schooled. I have to do that on the computer. And then I try to do the dishes. What I can't finish, my husband will end up doing. And then after that, it's about time to take a nap. I lay down and take a nap.

*PageID* 90. She naps 90 minutes to 2 hours a day and sleeps 5 or 6 hours at night. *PageID* 90, 92.  She has difficulty maintaining her personal hygiene. *PageID* 100. She becomes aggravated talking to people. *PageID* 101.

Jerry A. Olsheski, the vocational expert, was asked by the administrative law judge to assume a claimant with plaintiff's vocational profile with the mental limitations and restrictions articulated by Dr. Marlow, the state agency reviewing psychologist, *PageID* 403: *i.e.*, able to concentrate and persist at simple tasks, relate appropriately if she chooses to, and work at a steady pace to sustain simple, repetitive work. *PageID* 112. In response, the vocational expert testified that such a claimant could perform work as an unskilled assembler, unskilled inspector and unskilled sedentary hand packer. *PageID* 113.

**Administrative Decision**

In his decision, the administrative law judge characterized plaintiff's severe impairments as degenerative joint disease, osteoarthritis of the knees, bipolar and borderline personality disorder, and obesity. *PageID* 53. The administrative law judge also determined that plaintiff does not suffer an impairment or combination of impairments that meets or medically equals any listed impairment. *PageID* 54. The administrative law judge specifically considered, but rejected, any suggestion that plaintiff is disabled under Listings 12.04 (affective disorder) or 12.08 (personality disorders). Specifically, the administrative law judge determined that plaintiff was moderately restricted in her activities of daily living, had moderate difficulties in social functioning and had moderate difficulties in the areas of concentration, persistence or pace. There was no objective medical evidence that she had experienced episodes of decompensation. *PageID* 55-56. The administrative law judge also made clear that plaintiff's residual functional capacity reflected this degree of limitation. *PageID* 56.

The administrative law judge found that plaintiff has the residual functional capacity to

> Perform sedentary work as defined in 20 CFR 416.967(a) except the claimant is limited to occasional climbing of stairs. The claimant must avoid bending, squatting, stooping, crouching, and climbing ladders. Furthermore, the claimant must avoid all exposure to hazardous equipment, and the claimant must have the option to change position or alternate between sitting and standing at least every 30 minutes.

*PageID* 56-57. This portion of the administrative law judge's decision made no mention of the moderate limitations of function found to have resulted from plaintiff's documented severe mental impairments. However, the administrative law judge expressly stated that he accorded "great weight"

8

to the mental assessment of Dr. Marlow, the state agency psychological
consultant, "because it is consistent with the whole of the objective medical
evidence." *PageID* 59.  The administrative law judge gave "little weight"
to Mr. Bova's opinion "because the longitudinal records does [sic] not
support such severe limitations." *Id.*

Relying on the vocational expert's testimony, the administrative law
judge found that plaintiff is able to perform a significant number of jobs
in the national economy. *PageID* 60-61. Accordingly, the administrative law
judge concluded that plaintiff was not disabled within the meaning of the
Social Security Act. *PageID* 61.

### DISCUSSION

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's
decision is limited to determining whether the findings of the
administrative law judge are supported by substantial evidence and employed
the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971).
Substantial evidence is more than a scintilla of evidence but less than a
preponderance; it is such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762,
772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d
524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does
it resolve conflicts in the evidence or questions of credibility. *See
Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.
1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must
examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the
Commissioner's decision is supported by substantial evidence, it must be

affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In her *Statement of Errors*, plaintiff contends that the administrative law judge erred by failing to include any mental limitations in his residual functional capacity assessment, despite finding that plaintiff has moderate limitations in activities of daily living, social functioning, and concentration and pace. Doc. No. 14 at *PageID* 1049; *Reply*, Doc. No. 18. The Commissioner takes the position that this omission was tantamount to a clerical or typographical error and was, under the circumstances, harmless. *Memorandum in Opposition*, Doc. No. 17, *PageID* 1070. This Court agrees.

Dr. Marlow, the state agency reviewing psychologist, opined that plaintiff suffered moderate restrictions in activities of daily living, in maintaining social functioning and in concentration, persistence and pace. Plaintiff was, Dr. Marlow found, moderately limited in a number of other work-related areas of functioning. *PageID* 397-402. According to Dr. Marlow, plaintiff could concentrate and persist at simple, steady, repetitive work and could choose to relate appropriately. *Id*.

The administrative law judge incorporated Dr. Marlow's assessment in the hypothetical posed to the vocational expert, *PageID* 112, and upon which the administrative law judge relied. In his decision, the administrative law judge expressly accorded "great weight" to Dr. Marlow's opinions and assessment, *PageID* 59, and expressed his intention to include plaintiff's moderate limitations of function caused by her mental impairments in

plaintiff's residual functional capacity assessment.  *PageID* 56 ("Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.")  It is clear that, under these circumstances, the failure of the administrative law judge to later expressly and separately articulate those limitations in his assessment of plaintiff's residual functional capacity, *PageID* 56-57, was mere clerical oversight or typographical error.

Moreover, that error was harmless.  Read fairly, the decision of the administrative law judge was based on an assessment of plaintiff's residual functional capacity that included moderate limitations of functioning by reason of plaintiff's documented mental impairments.  Plaintiff does not appear to challenge that assessment but rather appears to argue only that the administrative law judge's failure to expressly incorporate those moderate limitations of functioning into the language reflected at *PageID* 56-57 of his decision requires reversal.  To reverse with directions to expressly incorporate into the residual functional capacity assessment the moderate limitations already clearly found and relied upon by the administrative law judge would be to demonstrate the harmless nature of the administrative law judge's error.  The Court declines to do so.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

                                                *s/Norah McCann King*
                                                Norah McCann King
                                                United States Magistrate Judge

June 25, 2013